IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DOUGLAS W. MAROLF, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3221 |
| | ) | |
| V. | ) | |
| | ) | |
| AYA AGUIRRE & ARANZABAL | ) | **MEMORANDUM AND ORDER** |
| S.A., NORTHEAST SHOOTING | ) | |
| SPORTS, L.L.C., ARMES DE | ) | |
| CHASSE, an Association, LOUISE | ) | |
| K. FOLEY, Individually and as | ) | |
| Trustee ad Litem of Armes de | ) | |
| Chasse, and ARMUND E. FOLEY, | ) | |
| Individually and as Trustee ad Litem | ) | |
| of Armes de Chasse, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Nebraska resident Douglas Marolf ("Plaintiff") filed this products liability action seeking damages for injuries he sustained when the barrel of a shotgun exploded in his hands. Plaintiff alleges that Defendant AyA Aguirre & Aranzabal S.A. ("AyA"), a manufacturer and international seller of firearms based in Spain, manufactured the offending shotgun and, along with Defendant Northeast Shooting Sports, L.L.C., f/k/a AyA U.S.A. ("Northeast"), a Connecticut limited liability company, sold the shotgun to Defendant Armes De Chasse ("Armes"). (Filing 1.) Plaintiff contends that Defendant Armes, a dissolved Pennsylvania corporation, imported the subject shotgun into the United States and sold the gun to a retailer, who then sold the gun to "an end user."[1] (*Id*.) Plaintiff maintains that he subsequently

---

[1] Also named as defendants in this action are Louise Foley and Armund Foley, who were Trustees ad Litem for Armes. (Filing 1.)

purchased the shotgun from a private party.  (*Id.*)

On December 21, 2009, AyA filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficient service of process.  (Filing 23.)  That same day, Northeast filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.  (Filing 26.)  In response, Plaintiff filed a motion for leave to conduct jurisdictional discovery on the issues of personal jurisdiction and minimum contacts, as well as sufficiency of service.  (Filing 31.)  The court granted Plaintiff's request and gave Plaintiff until April 30, 2010, to respond to Defendants' motions to dismiss.  (Filing 49.)

On May 27, 2010, AyA filed a second motion to dismiss arguing that the complaint should be dismissed pursuant to Fed. R. Civ. P. 4(m) because AyA had not been serviced with process within one hundred and twenty (120) days after the filing of the complaint and because the action is time-barred pursuant to Spain's statute of repose.[2]  (Filing 56.)

The above-referenced motions are all presently ripe for adjudication and each will be addressed herein.

I.     **Service of Process**

At the time AyA filed its initial motion to dismiss (filing 23), it had not been served with process in Spain.  Rather, service intended for AyA was attempted by mailing copies of the summons via certified mail to Thomas Hall, a member of

---

[2] AyA has since withdrawn its arguments for dismissal based on the statute of repose and, therefore, this issue will not be addressed in this order.  (Filing 61, Def.'s Reply Br. Supp. Mot. Dismiss at CM/ECF p. 8.)

2

Northeast, at Northeast's Connecticut office.  (Filings 10, 11.)  AyA argued that such service was improper because Mr. Hall has no connection to AyA and is not authorized to accept service on AyA's behalf.  On May 11, 2010, 196 days after the filing of the complaint, service was made upon AyA in Spain "pursuant to the Hauge Convention on the Service Abroad of Judicial and Extrajudicial Documents and in accordance with Rule 4(f)(1) of the Federal Rules of Civil Procedure and Article 6 of the Convention."  (Filing 55.)  Accordingly, AyA's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) on account of Plaintiff's failure to serve AyA in Spain (filing 23) will be denied as moot.

Apparently recognizing that the previously-alleged service defect had been cured, AyA filed a second motion to dismiss on May 27, 2010 (filing 56).  Through this second motion, AyA argues that the complaint should nevertheless be dismissed because AyA was not served with process within 120 days of the filing of the complaint as required by Fed. R. Civ. P. 4(m).  Under Fed. R. Civ. P. 4(m), a court may dismiss an action without prejudice if service is not made within 120 days after the filing of the complaint.[3]  Courts have consistently concluded, however, "that the 120-day time limit does not apply to service in foreign countries of individual or corporate defendants."  *Flock v. Scripto-Tokai Corp.*, No. Civ. A.H-00-3794, 2001 WL 34111630, *5 (S.D. Tex. July 23, 2001).  *See also Lucas v. Natoli*, 936 F.2d 432, 432-33 (9th Cir. 1991) ("[T]he plain language of Rule 4(j) makes the 120-day service

---

[3] Fed. R. Civ. P. 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.  This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

3

provision inapplicable to service in a foreign country . . . Whether or not the Rules of Civil Procedure should be amended to deal more adequately with the question of service in foreign countries is not for us to decide."); *Kim v. Frank Mohn A/S*, 909 F. Supp. 474, 480 (S.D. Tex. 1995) ("The exclusion of service in a foreign country from the 120 day limit is reasonable, and helps to counterbalance the complex and time-consuming nature of foreign service of process."); *Cargill Ferrous Int'l v. M/V Elikon*, 154 F.R.D. 193, 196 (N.D. Ill.1994) (finding that service in a foreign country is not subject to the 120-day time limit).

AyA contends, however, that the time limit contained in Rule 4(m) should nevertheless be imposed in this case because Plaintiff did not attempt to serve AyA in Spain within the 120-day period.  (Filing 61, Def.'s Reply Br. Supp. M. Dismiss, at CM/ECF p. 5).  The court recognizes that there is some authority which suggests that application of the 120-day limit is, in some instances, proper where foreign service is not initiated within that time frame.  *See Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (finding that plaintiff could not rely on the foreign service exception since foreign service had not been attempted, thereby implying a need to so attempt service); *but see Lucas*, 936 F.2d at 433 (9th Cir. 1991) (rejecting the argument that service abroad must be attempted within the 120-day limit).  However, to resolve the present motion, the court need not address whether it is proper to impose the 120-day time limit to foreign service under the circumstances presented here.  Even assuming that Rule 4(m) should be applied to foreign service in this case, dismissal is not warranted.

Rule 4(m) largely leaves dismissal to the court's discretion.  *See Freeze-Dry Products, Inc. v. Metro Park Warehouse, Inc.*, 159 F.R.D. 45, 46 (D. Kan. 1994) (recognizing the discretionary nature of Rule 4(m)).  AyA has not demonstrated that it has been prejudiced by Plaintiff's failure to effect service within 120 days. Although service was not made upon AyA in Spain, it is apparent that AyA was made aware of the suit quickly as it moved, through counsel, for an extension of time to

submit an answer or otherwise plead (filing 12) less than a month following the filing of the complaint. Moreover, two months following the filing of the complaint, AyA filed its initial motion to dismiss (filing 23). Based on the record, the court finds service has been made within a reasonable time. Therefore, AyA's motion to dismiss the complaint for failure to effect service within 120 days of the filing of the complaint (filing 56) will be denied.

## II.      Personal Jurisdiction

"To survive a motion to dismiss for lack of personal jurisdiction a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 588, 561 (8th Cir. 2003) (citing *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996)). "The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). To determine whether a plaintiff has asserted a prima facie case, the court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Pecoraro*, 340 F.3d at 561.

"Because Nebraska's long-arm statute has been construed to permit jurisdiction to the extent of constitutional limits," the court must decide "whether the exercise of personal jurisdiction over the defendants in this case comports with due process." *Id.* Due process requires that the defendant have sufficient minimum contacts with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (internal citations omitted). In evaluating personal jurisdiction, "[t]he central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state

5

and should, therefore, reasonably anticipate being haled into court there." *Pecoraro, 340 F.3d at 561* (citing *Burger King*, 471 U.S. at 475; *World-Wide*, 444 U.S. at 297).

The Supreme Court has recognized two types of personal jurisdiction: general and specific. *Epps, 327 F.3d at 648.* "When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Burlington Industries, Inc. v. Maples Industries, Inc.,* 97 F.3d 1100, 1103 (8th Cir.1996)). "However, if the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction." *Id.* (citing *Helicopteros Nacionales,* 466 U.S. at 415 n. 9). "When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic." *Id.* (citing *Helicopteros Nacionales,* 466 U.S. at 414).

The Eighth Circuit considers five factors when evaluating the sufficiency of a defendant's minimum contacts. These factors are: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir.1987) (quoting *Land O-Nod Co. v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)). The first three factors are of primary importance, and the last two are secondary factors. *Id.*

## 1.    Personal Jurisdiction over Defendant AyA

AyA is a foreign business with its principal place of business located in Eiber, Spain. (Filing 1.) AyA does not have offices anywhere in the United States and

6

manufactures all of its guns in Spain. (Filing 25-1.) AyA does, however, maintain business relationships with United States companies that import and distribute AyA products. According to AyA, it presently has two United States importers for its products: Defendant Northeast, a Connecticut limited liability company, and New England Custom Gun, Ltd., which is located in New Hampshire. (Filing 52-7.) Plaintiff contends that AyA is subject to this court's jurisdiction because AyA, through its relationships with United States companies, placed its products, including the allegedly defective shotgun, into the stream of commerce. (Filing 51, Pl.'s Br. Opp'n Mot. Dismiss, at CM/ECF pp. 6-12.) The court agrees.[4]

The United States Supreme Court has found that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen*, 444 U.S. at 297-98. Moreover, the Eighth Circuit has "recognized a state's exercise of jurisdiction over a seller who delivered its products to a regional distributor with an expectation that the distributor would penetrate the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 587-88 (8th Cir. 2008). *See Vandelune v. 4B Elevator Components Unlimited,* 148 F.3d 943, 947-48 (8th Cir. 1998) (noting that a manufacturer has purposefully reaped the benefits of the laws of each State in a trade area for due process purposes when the products pour in through a distributor). *See also Barone v. Rich Bros. Interstate Display Fireworks Co.,* 25 F.3d 610, 614 (8th Cir. 1994) (analyzing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ("[C]ontinuous placement of a significant number of products into the stream of commerce with knowledge that the product

---

[4] Plaintiff maintains that by filing its second motion to dismiss and making arguments based on the statute of repose, which have since been withdrawn, AyA waived its right to contest personal jurisdiction. (Filing 59, Pl.'s Br. Opp'n Mot. Dismiss, at CM/ECF p. 9.) Because the court finds that it has jurisdiction over this matter, the issue of waiver will not be discussed herein.

would be distributed into the forum state represents sufficient minimum contacts to satisfy due process.").

The evidence before the court demonstrates that AyA placed its products into the stream of commerce with both the knowledge and the expectation that its guns would be distributed and sold in Nebraska. Plaintiff has presented evidence showing that Cabela's, a hunting outfitter with corporate headquarters in Sidney, Nebraska, began selling AyA firearms approximately fifteen years ago. (Filing 52-1.) Since that time, Cabela's has sold approximately 500 AyA firearms. (*Id.*) In 2009 alone, Cabela's sales of AyA guns totaled approximately $250,000.00. (*Id.*) Although Cabela's corporate office places the gun orders through New England Custom Gun, one of AyA's importers, AyA was apparently aware of New England Custom Gun's business relationship with Cabela's. Sometime during 2003, representatives from Cabela's met with individuals from AyA in Sidney, Nebraska. (*Id.*) During that meeting, AyA and Cabela's developed an exclusive engraving pattern to be used on AyA guns to be sold exclusively by Cabela's. (*Id.*) In approximately 2003 or 2004, representatives from Cabela's traveled to Spain as guests of AyA. (*Id.*) While in Spain, the Cabela's representatives met with AyA's Mangaging Director, Inigo Lopez, at the AyA factory in Eibar and viewed the prototype of the AyA gun with the exclusive engraving pattern before final assembly. (Filing 52-2.)

Based on this evidence, the court finds that AyA's contacts with the State of Nebraska are not random or fortuitous. To the contrary, AyA's acts appear designed and calculated to place its guns into Nebraska. Because Nebraska has a significant interest in providing a forum for redress of injuries to its residents, assertion of personal jurisdiction over AyA is proper. Accordingly, AyA's motion to dismiss for lack of personal jurisdiction will be denied.

8

### 2.    Personal Jurisdiction over Defendant Northeast

The evidence shows that Northeast, itself, has no contacts with the State of Nebraska.  Northeast, a Connecticut limited liability company, is a small firearms importer and only has one place of business, which is located in Old Saybrook, Connecticut.  (Filing 28-1.) Northeast has no agents or employees in Nebraska.  (*Id.*) Further, Northeast does not have any contracts or business relationships with Nebraska distributors or retailers.  (*Id.*)  Northeast has never sold any products destined for Nebraska, and has no record of ever having shipped goods or products into the State.[5]  (*Id.*)

In an attempt to establish personal jurisdiction over Northeast, Plaintiff alleges that Northeast is AyA's "United States agent and alter ego" that "placed the shotgun in the stream of commerce."  (Filing 1.)   Plaintiff contends that AyA created Northeast to be the marketing, sales and distribution arm in the United States for AyA products.  Thus, according to Plaintiff, the court may impute to Northeast AyA's contacts with Nebraska for purposes of establishing personal jurisdiction.  Plaintiff is correct that, in certain situations, courts have been willing to attribute contacts made by one corporation with a forum state to another, related corporation.  For instance, the Eighth Circuit Court of Appeals has found that a court having personal jurisdiction over one corporation may also exercise jurisdiction over an affiliated entity, when the two companies function as alter egos.  In *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc., 519 F.2d 634 (8th Cir.1975)*, the Eighth Circuit Court of Appeals explained:

---

[5]  Northeast did not import the subject shotgun into the United States.   In fact, the evidence shows that Northeast was not even in existence at the time the offending shotgun was manufactured.  (Filing 25-1.)  The shotgun appears to have been manufactured in 1993, but Northeast was not created until 2006.  (*Id.*)

9

A corporation is not doing business in a state merely by the presence of its wholly owned subsidiary. However, the fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation.

*Id.* at 637 (internal citations omitted). The Court noted, however, that "[t]he circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute." *Id.*

While the Eighth Circuit Court of Appeals has concluded that there is no "all embracing rule" used to determine the relationship between two corporations, it is necessary to examine the degree of control exercised by one corporation over the other when determining whether the corporations function as alter egos. *Id. See also Epps*, 327 F.3d at 649 (stating that personal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent "so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."). In this case, there is no evidence that AyA exercises any control whatsoever over Northeast. Northeast was independently established as a limited liability company in 2006. (Filing 28-1.) Northeast is not a subsidiary of AyA and does not have any shared owners or directors with AyA. According to Northeast, neither AyA, nor its principals, agents or employees have any financial or ownership interest in Northeast. (Filing 52-7.) There is no evidence that AyA has any influence over Northeast's hiring, business location or overall business operations or that AyA otherwise controls Northeast's business activities.

Plaintiff cites several facts to support his claim that Northeast is AyA's alter ego. Plaintiff points to Northeast's use of "AYA-USA" as a d/b/a and the fact that

some of Northeast's advertising and letterhead displays AyA's trademark and trade name. (Filing 33-4.) Contrary to Plaintiff's assertion, this evidence does not suggest that an alter ego relationship exists between Northeast and AyA. While some of Northeast's advertising uses the AyA logo and name, New England Custom Gun, another importer of AyA guns, also displays the AyA name in its advertising. (Filing 54-1.) Moreover, a letter from Northeast to AyA retailer, H.G. Lomas Gunmakers, Inc., which was produced by Plaintiff to supposedly show that retailers of AyA products were forced into a relationship with Northeast, states that AyA implemented a centralized distribution plan through Northeast *and* New England Custom Gun. (Filing 52-5.) Further, Cabela's, which, as Plaintiff points out, is a relatively large retailer of AyA products, places its orders through New England Custom Gun, not Northeast. Given AyA's contacts and relationship with Cabela's, it is difficult to understand why Cablea's would place its orders with another importer, if Northeast is AyA's alter ego.

The court finds that Plaintiff has failed to demonstrate a prima facie case of alter ego jurisdiction. There is no evidence to suggest that AyA and Northeast are anything more than two companies that conduct business with one another. Accordingly, Defendant Northeast's motion to dismiss for lack of personal jurisdiction will be granted.

IT IS ORDERED:

1.    AyA's motions to dismiss (filings 23, 56) are denied;

2.    Northeast's motion to dismiss for lack of personal jurisdiction (filing 26) is granted and is otherwise denied as moot;

3.    Plaintiff's claims against Northeast are hereby dismissed without prejudice.

11

August 25, 2010.

BY THE COURT:

*Richard G. Kopf*

United States District Judge