IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DOUGLAS W. MAROLF, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3221 |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| AYA AGUIRRE & ARANZABAL S.A., | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

The plaintiff has filed a Motion for Leave to Designate a Liability Expert out of Time, (filing no. 121), and a Motion for Destructive Testing of Evidence and for Extension of Progression Order Deadline, (filing no. 124). The parties have also filed a Joint Motion to Extend Progression Order Deadlines and Corresponding Pretrial and Trial Dates, (filing no. 133). For the reasons stated below, the motion for destructive testing will be granted, the motion to add a new expert will be denied, and the joint motion to continue the extend the progression orders will be granted.

STATEMENT OF FACTS

The amended complaint alleges the plaintiff was injured when the left barrel of a 28-gauge shotgun manufactured and exported into the United States by the defendant exploded during firing. Filing No. 79. The plaintiff alleges the left barrel of the shotgun was defective, these defects caused the explosion and plaintiff's resulting injuries, and the defendant is liable for the plaintiff's injuries under negligence and strict liability theories of recovery.

On October 8, 2010, the court entered a progression order which set the following discovery deadlines:

| | |
|---|---|
| Plaintiff's liability expert disclosures: | March 25, 2011 |
| Defendant's liability expert disclosures: | April 25, 2011 |
| Plaintiff's Rebuttal to liability expert disclosures: | May 25, 2011 |
| Plaintiff's damages expert disclosures: | July 25, 2011 |
| Defendant's damages expert disclosures: | August 26, 2011 |
| Discovery and deposition deadline: | October 7, 2011. |

Filing No. 67.

Beginning in late January, 2011, the parties communicated regarding the parameters and protocols for performing non-destructive and minimally destructive testing on the subject gun. Filing Nos. 126-1, p. 14-17; 130-1, p. 5-10. On February 14, 2011, defense counsel forwarded an email from the defendant's expert which explained the agreed upon protocol the expert intended to follow. Filing No. 130-1, p. 8-10. As requested by the plaintiff, the expert agreed to videotape all stages of the testing process. Plaintiff's counsel and his retained expert were not present during the testing.

On March 14, 2011, the plaintiff timely disclosed the report of a liability expert, Hugh Lomas, who examined the barrel assembly of the gun. (Filing No. 123-2, Lomas Report, p. 1). Based on his report and deposition, Mr. Lomas has education in engineering, with experience as a gunsmith who specializes in European double guns. He has never visited the Spanish Proof House or AyA's manufacturing facilities. Filing No. 123-2, Lomas Report, p. 12; 123-5, at 6:15-8:25. Mr. Lomas concluded the left barrel explosion of the subject gun

-2-

was not caused by a barrel obstruction, but rather resulted from the following defects in the barrel assembly:

- Eccentric boring of the tube due to bending or distortion in the barrel blank;

- Additional striking and polishing operations performed on the outside profile of the left barrel tube; and

- Enlargement of the bore in excess of a 14.0 m/m (.551") diameter

Filing No. 123-2, Lomas Report, p. 2.

Mr. Lomas  measured the barrel wall thickness of the left barrel at 4-, 6-, 8-, 9-, 10-, 12-, and 14-inch depths and at the 1, 5, 6, 7, 8, 9, 10, 11, and 12 clock positions.  Filing No. 123-2, Lomas Report, p. 7.   He did not, however, conduct any destructive testing of the weapon.

Non-destructive and minimally destructive testing on the gun was apparently completed in early April; the shotgun and all samples were shipped back to plaintiff's counsel on April 7, 2011.  Filing No. 126-1, p. 18.  The reports of defendant's liability experts were served on or before April 25, 2011.  Filing No. 123-1, p. 2, ¶ 4.

The defense experts, Mr. Hutton and Dr. Block, concluded (among other things) that the gun barrel was weakened by defective post-manufacture repair work. Mr Hutton noted the gun weighed 16 grams less than proof, indicating the gun exploded due to weaknesses created from inexpert repair work conducted after the gun left defendant's possession and control.

-3-

Plaintiff's liability expert, Mr. Lomas , provided a rebuttal expert report on May 13, 2011.  Mr. Lomas challenges the facts and assumptions relied upon by the defendant's experts in formulating their opinions.  Mr. Lomas states the barrel weakness was caused post proof but before shipment from the factory.  His rebuttal report explains that in his experience, and based on his review of AyA's work flow sheet for shotguns, AyA performs polishing and brightening operations post proof, which can account for a 16-gram weight reduction of the gun that is not attributable to inexpert, after-market repairs.  Filing No. 123-3 at p. 2.  See also, filing no. 123-6, p. 2, answer to interrogatory 27.  Mr. Lomas' rebuttal report also noted the uniform hone cross hatching depicted in photographs taken by the defendant's expert indicated the barrel was honed by a honing machine during the manufacturing process, and not by a portable drill with honing heads as used in gun repair shop facilities.   Filing No. 123-3 at p. 3-4.  See also, filing no. 123-5, at 91:7-92:10.

During his deposition on June 8. 2011, Mr. Lomas was asked if he measured the inside of the left barrel to confirm that the barrel was eccentrically bored at the factory.  Mr. Lomas stated that due to the ribs, he could not perform thickness testing without slicing through the relevant section of the barrel, and he had performed no destructive testing.  Filing No. 123-5, at 40:20-41:4.

On July 6, 2011, the defendant provided answers to the plaintiff's Second Set of Interrogatories.  The defendant states it does not keep and therefore cannot produce records or provide information regarding the any barrel thickness measurements for the subject gun as of the date it left the defendant's factory.  Filing No. 123-6, p. 2, answer to interrogatory 28.  The defendant also states that it has no information regarding the make and model of the honing machine used to manufacture the subject gun.  Filing No. 123-6, p. 2, answer to interrogatory 29.

-4-

Following the deposition of Mr. Lomas, the plaintiff has searched diligently to locate an expert qualified to offer an opinion regarding whether the markings and other physical attributes of the barrels came from defendant's factory equipment or from an inexpert repair. Plaintiff now seeks to disclose, Kirk Merrington, as a firearms expert. See filing no. 123-7.

On September 1, 2011, the plaintiff requested dates for deposing the defendant's corporate representative Inigo Lopez, and its expert witnesses, Dr. Block and Mr. Hutton. Filing No. 126-1, p. 6.

On September 15, 2011, Mr. Lomas emailed a proposed protocol for further destructive examination and testing of the failed gun barrel, the goal being to "conclusively establish the degree of eccentricity within the failed barrel and further evaluate the internal finishing techniques of the barrels to confirm factory operations." Filing No. 126-1, p. 9-10. The proposed testing protocol was promptly forwarded to defense counsel, and the barrels of the subject gun were shipped to the plaintiff's expert to await testing. Filing No. 126-1, p. 2, ¶ 5.

On September 19, 2011, the defendant objected to performing destructive testing as follows:

> [D]efendant objects to the Lomas supplemental testing as being untimely. Mr. Lomas already issued his report in this matter and has been deposed. In fact, during Mr. Lomas' deposition he made no indication that further testing was contemplated or required with respect to supporting his opinions. We assume that this further testing would be followed by a supplemental report; either of which would require another deposition of Mr. Lomas. Such testing will dramatically increase the cost of this litigation for defendant, especially compared to plaintiff's limited damages. Finally, we do not believe that this testing, supplemental reporting and a supplemental deposition, in addition to defendant's experts' evaluation of such new materials, can be accomplished

before the current discovery deadline. If plaintiff is going to insist on moving forward with the Lomas proposed protocol, please advise as we will need to consider filing a motion for protective order.

Filing No. 126-1, p. 12.

The October 7, 2011 discovery deadline could not be met even absent any additional testing by the plaintiff.  In his September 19, 2001 email to the plaintiff's counsel, defense counsel also stated, "the earliest we can produce Mr. Lopez from AyA for deposition would be during the first few weeks of November." Filing No. 126-1, p. 12.

ANALYSIS

The issues in dispute are: 1) whether the plaintiff should be permitted to perform destructive testing on the gun barrel; 2) whether the plaintiff should be permitted to name an additional expert; and 3) whether and to what extent the progression deadlines for this case should be extended.

1)      Destructive testing of the gun barrel.

Unlike the facts raised in most court opinions dealing with destructive testing, in this case the plaintiff, who owns the gun, is asking for leave to perform destructive testing.  Since the plaintiff owns the gun, but for this lawsuit, he could destroy it if he chooses.  What the parties are actually arguing about is whether the plaintiff should be permitted to perform destructive testing on evidence which must, by virtue of this litigation, be available to both parties, and whether the plaintiff can then use the resulting information at trial.

-6-

Destructive testing of evidence is governed by Rule 34 of the Federal Rules of Civil Procedure.  See, e.g., Dabney v. Montgomery Ward & Co., Inc., 761 F.2d 494, 498 (8th Cir. (1985).  Pursuant to Rule 34(a)(1)(B), "[a] party may serve on any other party a request . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample" any "designated tangible things."

The plaintiff served a proposed testing protocol on the defendant, and the plaintiff does not object to having the defendant, its counsel, or its experts present during the destructive testing.  The defendant does not object to the proposed testing protocol itself, but claims the request is not timely.  The defendant argues that any destructive testing should have been performed before plaintiff's expert was deposed.

The discovery and deposition deadline was October 7, 2011.  The plaintiff's request to perform destructive testing on the subject gun, made under the authority granted by Rule 34, was timely made on September 15, 2011.  The plaintiff's request to perform destructive testing was not untimely, and as to this area of discovery, its motion will be granted.

2)      Disclosure of an additional expert.

The plaintiff claims destructive testing will further reveal the thicknesses of the barrel, any eccentricity, and any cross-hatch markings.  Based on this information, the plaintiff claims he can determine if the left gun barrel was defective when it left AyA's factory, or whether it was rendered defective by improper aftermarket repairs.  The plaintiff seeks to add an expert who can provide testimony regarding whether the crosshatch markings in the gun barrel at issue were created by a honing machine at the defendant's factory or by an inexpert repair of the barrel sometime thereafter.  Filing No. 122, p. 3 ¶ 8.

-7-

Pursuant to Rule 16(b)(4), a case management order setting progression deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . , [but the] 'existence or degree of prejudice to the party opposing the modification' and other factors may also affect the decision." Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001). In general, the court will not consider prejudice, or the lack thereof, if the movant has not been diligent in meeting the scheduling order's deadlines. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008). The movant's level of diligence and the degree of prejudice to the parties are both factors to consider when assessing if good cause warrants extending a case management deadline, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only following a requisite threshold finding of due diligence. Sherman, 532 F.3d at 716-17; Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006). In all cases involving the interpretation and application of the Federal Rules of Civil Procedure, the court must fairly balance the obligations and positions of the parties to promote the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; Marmo, 457 F.3d at 759.

The plaintiff's motion for leave to identify an additional expert was filed on August 12, 2011, more than four months after the March 25, 2011 deadline for disclosing plaintiff's liability experts, and three months after the plaintiff's current expert, Mr. Lomas, identified the importance of investigating and determining the source of the crosshatch markings in his rebuttal report. The plaintiff did not move to add a new expert until after his current expert was deposed. In that deposition, Mr. Lomas stated he had never seen the AyA factory, and based on defendant's discovery responses, neither the defendant nor Mr. Lomas know the make and model of the honing machine used to manufacture the gun at issue. But there is

nothing of record indicating that plaintiff's proposed new expert knows the answer to this question or has visited the defendant's factory.

Based on the evidence before the court, the plaintiff's current expert, Mr. Lomas, was the first to note the significance of the cross hatch markings in the barrel. Before his deposition was taken, he discussed destructive testing with the plaintiff's counsel. After the potential significance of the cross hatch markings was raised in Mr. Lomas' rebuttal report, and then his deposition, Mr. Lomas drafted the proposed destructive testing protocol. Even absent any information regarding the make and model of factory equipment used to hone the gun barrel at issue, Mr. Lomas testified regarding the importance of cross hatch markings and measurements when deciding whether factory or aftermarket processes caused the gun to explode. Mr. Lomas' testimony was not limited to a particular make and model of honing machine, and the basis for his testimony seems to apply irrespective of such details. He essentially says cross-hatch markings will appear more evenly distributed when created by a factory machine compared to a manually-operated drill.

From the record before the court, understanding how the gun was manufactured, how and with what the barrel was honed, and the value of closely inspecting the exploded gun for evidence of factory or aftermarket repair defects was or could have been anticipated from the outset of this litigation. The plaintiff retained and disclosed an expert to evaluate these issues. It appears he now wants an additional expert to bolster what the current expert is already saying. Under such facts, the plaintiff has not made the threshold showing of due diligence; the need or want of an additional could have been anticipated before the March 25, 2011 expert disclosure deadline.

Having concluded the plaintiff has failed to show due diligence, I need not discuss the extent the plaintiff will be prejudiced by if an additional expert is not allowed. That said,

based on the record currently before the court, Mr. Lomas remains able and willing to serve as an expert for the plaintiff, and there is no specific evidence explaining how or why Mr. Merrington's testimony would be necessary for the presentation of the plaintiff's case.

The plaintiff has failed to show good cause to permit the untimely disclosure of an additional expert witness. His motion to name Mr. Merrington as a supplemental liability expert will be denied. See, e.g., Marmo, 457 F.3d at 759 -760.

Accordingly,

IT IS ORDERED:

1)   The plaintiff's Motion for Leave to Designate a Liability Expert out of Time, (filing no. 121), is denied.

2)   The plaintiff's Motion for Destructive Testing of Evidence and for Extension of Progression Order Deadline, (filing no. 124), is granted as to the request for destructive testing. The request for an extension of the Progression Order deadlines is denied as moot.

3)   The parties' Joint Motion to Extend Progression Order Deadlines and Corresponding Pretrial and Trial Dates, (filing no. 133) is granted. The remainder of the case will progress as follows:

   a)   A jury trial is set to commence on June 4, 2012. No more than eight days are allocated to the trial of this case and counsel shall plan accordingly. This case is subject to the prior trial of criminal cases and such other civil cases as may be scheduled for trial before this one.

   b)   The pretrial conference will be held before the undersigned magistrate judge on May 25, 2012 at 10:00 a.m. One- half hour is allocated to this conference. Counsel shall email a draft pretrial conference order to zwart@ned.uscourts.gov, in either MS Word or WordPerfect format, by 5:00 p.m. on May 24, 2012, and the draft order shall conform to the requirements of the local rules.

    c)       The discovery and deposition deadline is February 6, 2012. Motions to compel discovery must be filed at least 15 days prior to the discovery and deposition deadline.

    d)       The deadline for filing motions to dismiss, motions for summary judgment or motions to exclude expert testimony on <u>Daubert</u> and related grounds is February 27, 2012.

DATED this 1st day of December, 2011.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

    *This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.